**Felipe URENA, Petitioner,**

v.

**The PEOPLE OF the STATE OF NEW YORK, Respondent.**

**No. 99 Civ. 5748(DLC).**

United States District Court, S.D. New York.

April 10, 2001.

Felipe Urena, Malone, NY, Petitioner, pro se.

Bruno V. Gioffre, Jr., Assistant Attorney General, New York City, for Respondent.

## OPINION AND ORDER

COTE, District Judge.

In a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed on July 20, 1999,[1] Felipe Urena ("Urena") challenges his conviction following a plea of guilty to criminal sale of a controlled substance in the second degree, New York Penal Law ("PL") § 220.41. On November 6, 2000, Magistrate Judge Fox issued a Report, recommending that this petition be dismissed. The petitioner has submitted a written response to the Report, which is construed as a timely objection. Based upon the analysis which follows, the Report is adopted and this petition is dismissed.

## BACKGROUND

The record shows the following. Petitioner Urena was indicted and charged with two counts of criminal sale of a controlled substance in the third degree, three counts of criminal sale of a controlled substance in the first degree, two counts of criminal sale of a controlled substance in the second degree, and one count of criminal sale of a controlled substance in the fourth degree. At a pretrial conference on July 24, 1997, Judge Alderberg, in the Supreme Court of New York County, in-

formed the parties of a new case that the prosecutor had moved to consolidate with this one, but that did not include any additional charges against petitioner. Subsequently, petitioner's counsel, Michael Yuceviceius ("Yuceviceius"), the petitioner, and the court had the following conversation:

> MR. YUCEVICEIUS: Mr. Urena wanted to be heard in the matter of assignment of new counsel.
>
> THE COURT: Yes.
>
> THE DEFENDANT: If you are going to have additional charges why don't you just wrap everything and do an offer of something because I am not going to stand here with 9 or 800 charges against me.
>
> THE COURT: The offer is three years to life.
>
> THE DEFENDANT: I will plead guilty.

Yuceviceius then notified the court that he would withdraw Urena's plea of not guilty and enter a plea of guilty on his behalf to a violation of criminal sale of a controlled substance in the second degree, noting for the record that "th[e] motion to consolidate does not include any new charge against Mr. Urena." The court confirmed on the record that the new case involved a different defendant. Following a brief recess during which the prosecutor confirmed that the plea offer remained available, Urena entered a guilty plea. Urena represented that he had sold over two ounces of cocaine to an undercover officer on December 6, 1996, at 547 West 142nd Street in New York County, that he knew that he would be sentenced to three years to life, that no other promises—beyond the promised sentence—were made to him, that he was not threatened in order to plead guilty, and that he knew that, in

---

1. The petition was received by the Court's Pro Se Office on June 3, 1999.

pleading guilty, he was giving up his right to trial and the derivative rights to be represented by counsel, cross-examine witnesses, remain silent, and require the prosecutor to prove Urena's guilt beyond a reasonable doubt.

On August 8, 1997, Urena appeared before the court to be sentenced. At sentencing, Yuceviceius represented to the court that Urena had an "application": he wished to withdraw his plea, and had told the probation officer that "[h]e believes that [Judge Alderberg] and [Yuceviceius] and the prosecutor were less than fair with him." When the court asked defense counsel what, specifically, Urena contended, defense counsel suggested that Urena address the court himself. Through a Spanish interpreter, the following conversation ensued:

THE COURT: Mr. Urena, you want to take your plea back?

THE DEFENDANT: Yes.

THE COURT: Why?

THE DEFENDANT: Because I don't feel guilty and I can't go to sentence for a crime I did not commit.

THE COURT: Your application is denied. Any legal cause to show why sentence should not be imposed?

MR. YUCEVICEIUS: No.

THE COURT: Do the People wish to be heard?

[THE GOVERNMENT]: I will rely on the promise.

THE COURT: Anything else?

MR. YUCEVICEIUS: Actually, there is one thing. The probation report says that he is a predicate felon. He is not and the People have conceded—

THE COURT: You are moving to amend the report accordingly.

MR. YUCEVICEIUS: Correct.

THE COURT: Do you wish to say anything?

THE DEFENDANT: Well, a guarantee for a trial.

THE COURT: Defendant is sentenced to state prison for a minimum term of three years maximum term of life. Mandatory surcharge is imposed.

THE DEFENDANT: I want to take away this lawyer.

MR. YUCEVICEIUS: Mr. Urena has been handed written notice of his right to appeal and I am advising him he has 30 days in which to appeal.

THE COURT: Thank you.

Urena appealed his conviction to the New York State Supreme Court, Appellate Division with assigned appellate counsel, Laura Rossi–Ortiz. In her brief, Rossi–Ortiz asked to be relieved of the obligation of representing petitioner on the grounds that there were no non-frivolous grounds to be raised on appeal. Ross–Ortiz's application to withdraw as counsel was granted and Urena's conviction was affirmed on December 1, 1998. The Court of Appeals denied Urena's motion for leave to appeal on April 5, 1999.

Urena filed this petition on July 20, 1999. In his petition, Urena principally raises four claims, namely that (1) his guilty plea was unlawfully induced or was involuntary; (2) he was denied effective assistance of counsel at trial and (3) on appeal, and (4) that he was denied his right to appeal.

## DISCUSSION

In reviewing the Report, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that

there is no clear error on the face of the record." *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted). *See also Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991) (court may accept report if it is "not facially erroneous"). The Court shall make a *de novo* determination of those portions of the report to which objections are made. *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997). In light of the fact that Urena's written response to the Report raised only one objection to its conclusions, only a few of the issues raised in the Report merit further discussion here.

### 1. Involuntary Plea

■ Petitioner asserts in his habeas petition that his plea was involuntary "because of lies by the D.A. and attorney" and "the presence of a false witness by the D.A. and false statement by the same person." Urena additionally asserts in his petition that he "was not guilty of the charge" to which he pled guilty.

■ The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ventura v. Meachum,* 957 F.2d 1048, 1058 (2d Cir. 1992) (citation omitted). "[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988). Where a defendant is represented by counsel during the plea and enters a plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice

'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). When considering petitioner's assertion that he is innocent, "[t]he self-inculpatory statements he made under oath at his plea allocution carry a strong presumption of verity, and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant." *United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir.1997) (citation omitted).

The Report found that petitioner had not made more than conclusory statements regarding the voluntariness of his plea. Specifically, petitioner did not identify the "lies" told to him by the prosecutor or the "false statements" made by witnesses, nor did petitioner produce evidence to support his claim. Furthermore, the Report noted that the plea and sentencing transcripts indicated that petitioner had made a knowing and voluntary choice to plead guilty in order to limit his exposure to a lengthy term of incarceration.

■ Urena filed a written response to the Report that reiterates that his plea was involuntary, but does not specifically object to the Report's analysis and does not include additional allegations that support his claim that his plea was involuntary. Having construed this submission as an objection and considered the plea and sentencing transcripts and submissions anew, this Court has found nothing in the record to substantiate Urena's claim that his plea was involuntary. The transcript does reflect that Urena decided to plead guilty in order to avoid "additional charges," when he was not, in fact, charged with additional crimes in the superceding indictment or elsewhere. Yu-

ceviceius and the court both clarified this fact on the record, however, and petitioner proceeded to plead guilty, nonetheless. Urena additionally stated on the record that he knew that he was giving up the right to trial and the safeguards that accompany that right, that he was not threatened or forced to plead guilty, and that he sold over two ounces of cocaine to an undercover officer. These statements undermine petitioner's claim that his plea was involuntary or that he is innocent of the crime to which he pled guilty. *See, e.g., United States v. Diaz,* 176 F.3d 52, 114 (2d Cir.1999); *United States v. Torres,* 129 F.3d 710, 716 (2d Cir.1997). The Report's recommendation as to Urena's contention that his plea was involuntarily made is, therefore, adopted.[2]

### 2. Ineffective Assistance of Counsel

Urena additionally claims that his trial attorney, Michael Yuceviceius, failed to provide effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that "(1) counsel's performance was unreasonably deficient under prevailing professional standards, and (2) but for counsel's unprofessional errors, there exists a reasonable probability that the result would have been different." *United States v. Torres,* 129 F.3d 710, 716 (2d Cir.1997) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).[3] A "reasonable probability" is one " 'sufficient to undermine confidence in

the outcome.' " *Flores v. Demskie,* 215 F.3d 293, 304 (2d Cir.2000) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). There is a strong presumption that counsel's conduct falls within the "wide range of reasonable professional assistance." *United States v. Aguirre,* 912 F.2d 555, 560 (2d Cir.1990). The right to effective counsel, however, may be violated by "even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639 (1986).

█ The Report found that Yuceviceius did not fail to provide petitioner with effective assistance of counsel. The Report notes that trial counsel's advice to petitioner to accept the plea offer did not constitute ineffective assistance because it was a plea to fewer than all the counts in the indictment and for less than the maximum sentence to which the petitioner was exposed. The Report additionally notes that Yuceviceius challenged inaccurate matter in the pre-sentence report and moved to amend those inaccuracies. Petitioner did not object to this analysis. Reviewing these conclusions for facial error, and finding none, the Report's recommendation to deny petitioner's allegation of ineffective assistance of counsel is adopted.

### 3. Ineffective Assistance of Appellate Counsel

█ Petitioner additionally asserts that his appellate counsel provided ineffec-

---

**2.** To the extent that this petition challenges Judge Alderberg's refusal to allow Urena to withdraw his guilty plea, it is denied. Based upon the conclusory nature of petitioner's allegations regarding the basis of his motion to withdraw his guilty plea at the time of sentence, it was not an abuse of discretion for Judge Alderberg to refuse to grant petitioner's motion without a hearing, even though in some circumstances it is "better if the court ... inquire[s] further as to the basis for defendant's withdrawal motion." *People v. Fiume-*

*freddo,* 82 N.Y.2d 536, 537, 605 N.Y.S.2d 671, 626 N.E.2d 646 (1993).

**3.** This is the same standard used to determine whether a guilty plea was involuntary due to ineffective assistance of counsel and, therefore, applies here to the extent that petitioner is making a claim of that nature. *United States v. Hernandez,* 242 F.3d 110, 112 (2d Cir.2001) (per curiam).

tive assistance. The same test used to evaluate the performance of trial counsel is also used to evaluate the performance of appellate counsel. *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). Appellate counsel's performance will not be deemed unreasonable merely because she failed to "advance every nonfrivolous argument." *Id.* Rather, counsel may focus on key issues and "winnow[ ] out weaker arguments." *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). A petitioner will establish constitutionally inadequate performance when he shows that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo,* 13 F.3d at 533.

■■■■ If appellate counsel can find no non-frivolous basis to appeal, she must submit a motion to withdraw, comporting with the requirements enunciated in *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), that "demonstrate[s] that a conscientious examination of the record has been made and that there are no non-frivolous issues on which an appeal can be based," and, if the petitioner contests the voluntariness of his guilty plea, that specifically discusses "the validity of the plea and why there are no non-frivolous issues regarding the plea on which to base an appeal." *United States v. Ibrahim,* 62 F.3d 72, 74 (2d Cir.1995) (per curiam). Appellate counsel's failure to submit a proper *Anders* brief "amounts to a constructive denial of counsel to appellant[ ]." *United States v. Zuluaga,* 981 F.2d 74, 75 (2d Cir.1992) (per curiam).

■■■ The Report concludes that plaintiff's appellate counsel was not ineffective because Rossi–Ortiz "searched the record from the trial court for non-frivolous issues upon which to mount an appeal on petitioner's behalf, and found none," subsequently "submitted a detailed brief to the New York State Supreme Court, Appellate Division, First Department, which analyzed the voluntary and knowing nature of the plea of guilty that petitioner tendered to the trial court," and, in her brief, "cited controlling legal precedent that demonstrated that no viable issues for appeal existed." This Court agrees that Rossi–Ortiz's brief was more than adequate to fulfill her obligations under *Anders,* and petitioner does not challenge this conclusion. Accordingly, the Report's conclusion is adopted.

**4. Denial of Right to Appeal**

Petitioner additionally asserts that he was denied his right to appeal. In recommending that this basis for relief be denied, the Report focuses on the fact that petitioner was given written notice of his right to appeal and that an appeal was, in fact, mounted on his behalf. Although appellate counsel found no non-frivolous issues to present to the appellate court, this is a conclusion that the New York State Supreme Court, Appellate Division, First Department found to be correct in its affirmance of petitioner's conviction. The petitioner does not challenge the Report's conclusion that petitioner had, in fact, the right to appeal and exercised that right. Finding no facial error, the Report's conclusion is adopted.

**CONCLUSION**

For the reasons stated, the Report and Recommendation of November 6, 2000 is adopted and the petition for a writ of habeas corpus is denied. The Clerk of Court shall close this case.

I further decline to issue a certificate of appealability. The petitioner has not made a substantial showing of a denial of a federal right and appellate review is, therefore, not warranted. *Tankleff v. Senkowski,* 135 F.3d 235, 241 (2d Cir.1998);

*Rodriquez v. Scully,* 905 F.2d 24 (2d Cir. 1990). In addition, I find, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.