**Kyle HABECKER, Plaintiff,**

v.

**KFC U.S. PROPERTIES, INC., Defendant.**

**No. 10–cv–4686 (KAM)(VMS).**

United States District Court, E.D. New York.

March 6, 2013.

Jessica Lynn Kronrad, Jessica Kronrad, Esq., Francesco Pomara, Jr., Jack L. Grossman, Jeffrey M. Blum, Mallilo & Grossman, Flushing, NY, for Plaintiff.

Andrew J. Funk, Smith Mazure Director Wilkins Young & Yagerman, P.C., New York, NY, for Defendant.

### *ORDER ADOPTING REPORT AND RECOMMENDATION*

MATSUMOTO, District Judge:

On October 13, 2010, plaintiff Kyle Habecker ("plaintiff"), removed this negligence action, pursuant to 28 U.S.C. §§ 1441(d) and 1446(d), against defendant KFC U.S. Properties, Inc. ("defendant"), from New York Supreme Court, Queens County, where it had originally been commenced on August 3, 2010. (ECF No. 1, Notice of Removal filed 10/13/10.) On March 30, 2012, defendant moved for summary judgment on plaintiff's claim arising from an accident that occurred on September 5, 2008, in which plaintiff allegedly twisted his left ankle in a depression in the defendant's parking lot. (ECF No. 25.) Plaintiff filed a response, and defendant subsequently replied. (ECF Nos. 26–27.) Presently before the court is a Report and Recommendation issued by Magistrate Judge Vera M. Scanlon on February 7,

2013, recommending that the court deny defendant's motion for summary judgment in its entirety. (ECF No. 29, Report and Recommendation dated 2/7/13 ("R & R"), at 656–57.)

As explicitly noted at the end of Magistrate Judge Scanlon's Report and Recommendation, any objections to the Report and Recommendation were to be filed on or before February 21, 2013. (R & R at 656–57.) The Report and Recommendation was served upon the parties' counsel via the ECF filing system. (*Id.*) The period for filing objections has expired, and no objections to Magistrate Judge Scanlon's Report and Recommendation have been filed by either party.

■ In reviewing a Report and Recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where no objection to the Report and Recommendation has been filed, the district court "need only satisfy itself that that there is no clear error on the face of the record." *Urena v. New York,* 160 F.Supp.2d 606, 609–10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985)).

Upon a careful review of the Report and Recommendation and the record in this case, and considering that neither party has objected to any of Magistrate Judge Scanlon's thorough and well-reasoned recommendations, the court finds no clear error in the Report and Recommendation and hereby affirms and adopts it as the opinion of the court.

Accordingly, the court orders that defendant's motion for summary judgment is denied in its entirety.

### CONCLUSION

For the reasons set forth above, defendant KFC U.S. Properties, Inc.'s motion for summary judgment is denied in its entirety.

The parties are directed to confer regarding setting a date for a settlement conference before Magistrate Judge Scanlon. If settlement efforts are not successful, the parties shall then confer regarding a proposed trial date and a schedule for preparation and submission of civil pretrial materials in accordance with Section V of the undersigned's Individual Practice Rules, available at https://www.nyed.uscourts.gov/pub/rules/KAM-MLR.pdf. The parties are further ordered to file via ECF, on or before April 6, 2013, a joint status letter to the court regarding their planned settlement efforts.

**SO ORDERED.**

### *REPORT AND RECOMMENDATION*

SCANLON, VERA M., United States Magistrate Judge:

Plaintiff Kyle Habecker ("Plaintiff" or "Mr. Habecker") brings this action alleging that the Defendant KFC U.S. Properties, Inc. ("Defendant") maintained a KFC Restaurant ("the Restaurant") parking lot in an unsafe and dangerous condition that led to Plaintiff's injury. *Docket No. 1.* Defendant has moved for summary judgment. *Docket No. 25.* On December 11, 2012, the Honorable Kiyo A. Matsumoto referred this summary judgment motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that Defendant's summary judgment motion be denied.

### INTRODUCTION

Plaintiff originally filed this lawsuit on August 3, 2010 in New York Supreme Court, Queens County, which is the county where the dispute arose. *Docket No. 1.* In short, the complaint accuses Defendant of negligence due to the existence of a de-

pression in its Restaurant parking lot into which Plaintiff stepped, twisting his ankle in the process. At the time the complaint was filed, Plaintiff was a citizen of the State of Massachusetts and Defendant a corporate citizen of the State of Delaware and the Commonwealth of Kentucky. *Docket No. 25.* The damages alleged appear to be over $75,000. On October 13, 2010, Defendant removed the action to this Court invoking federal diversity jurisdiction. *Docket No. 1.*

After completing discovery, Defendant moved for summary judgment, seeking dismissal of Plaintiff's action pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Docket No. 25.* Plaintiff filed a response in opposition to Defendant's summary judgment motion, *Docket No.* 26, and Defendant filed a reply, *Docket No. 27.* For the reasons set forth below, the undersigned recommends that Defendant's motion be denied in its entirety.

**FACTUAL BACKGROUND**

The Local Rules state that a motion for summary judgment requires that both Parties file what is known as a Rule 56.1 Statement of Material Facts, which informs the Court "of the material facts as to which the moving party contends there is no genuine issue to be tried." Defendant has not filed a Rule 56.1 Statement of Material Facts. Plaintiff has filed a very brief Rule 56.1 Statement. Defendant should note that Local Civil Rule 56.1 states that "[f]ailure to submit such a statement may constitute grounds for denial of the motion." The Court could reasonably deny the motion on this ground alone.

Although having the aforementioned papers from both Parties would have been helpful, the Court has found, from its review of the Parties' submissions, that there is a central disputed fact material to Defendant's motion for summary judgment as to the dimensions of the alleged sidewalk

defect in which Plaintiff twisted his ankle and whether the defect was or was not "trivial." Accordingly, the following factual summary largely draws on the nonmovant Plaintiff's version of events, as well as Plaintiff's father's testimony, as described in their depositions. Plaintiff's deposition and his father's deposition are appended to Defendant's summary judgment motion at *Docket No. 25* (hereinafter cited to in the following format: "(Pl. Dep. [page]: [line] )" and "(Father Dep. [page]: [line] )".

**I. The Accident**

On September 5, 2008, Plaintiff and his father, Douglas Habecker, visited the Restaurant, which is located at 158–05 Union Turnpike, in Flushing, Queens, New York. *Docket Nos. 1, 25.* Defendant operates, possesses, manages, controls and maintains the Restaurant, although its citizenship is in Delaware and Kentucky. *Docket Nos. 1, 4.* Plaintiff and his father parked their truck in the Restaurant's parking lot and entered the Restaurant to dine. (Pl. Dep. 11:2)

A brief description of the Restaurant premises is important to understanding the accident that led to Plaintiff's injury. The Defendant submitted a map of the Restaurant premises to the Court in its notice of removal. *Docket No. 1.* The Restaurant sits back from Union Turnpike and has a parking lot with sixteen spaces in front of the dining facility. *Id.* (Pl. Dep. 12:17, 13:8). Nine of these sixteen spaces border a sidewalk that runs the length of the Restaurant's front, parallel to Union Turnpike. The sidewalk, which is set atop a curb above the parking lot surface, offers patrons a pedestrian route to and from the Restaurant's front door and its parking lot. *Docket No. 26,* App. A (photographs of the accident scene taken by Plaintiff and used as exhibits during the Plaintiff's deposition). Each of the parking spaces has a

concrete parking bumper to alert incoming patrons when they should put their vehicles in park mode. (Pl. Dep. 11:24)

Plaintiff and his father exited the restaurant. (Pl. Dep. 11:24) It was a sunny, dry day, and they walked on the sidewalk towards Plaintiff's father's truck which was parked in the parking lot. (Pl. Dep. 20:10–18; Father Dep. 11:17) Plaintiff's father walked ahead of Plaintiff by about "a step." (Pl. Dep. 15:11; Father Dep. 21:24) Plaintiff's father saw a depression in the parking lot that was between two concrete parking bumpers buttressing the sidewalk. (Father Dep. 37:25) The depression was roughly located in the space between the concrete parking bumpers and the sidewalk itself. Plaintiff's father remembers that as he stepped off of the curb and into the parking lot, he stepped to the right of the depression in order to avoid it. (Father Dep. 37:25, 38:8) Plaintiff's father turned to alert Plaintiff about the depression. (Father Dep. 38:12)

By that time, however, Plaintiff himself was stepping off of the curb, and there was no time for the warning. (Father Dep. 38:15) Nor did Plaintiff himself see the depression, despite the fact that he had an unobstructed view of it. (Pl. Dep. 20:25) Plaintiff's left foot stepped into the depression and twisted. (Pl. Dep. 21:15) Plaintiff lunged forward and planted his right foot down to stabilize himself. (Pl. Dep. 21:21) Plaintiff also grabbed onto a parked car in order to try to stabilize himself. (Pl. Dep. 22:18; Father Dep. 22:23) Plaintiff did not fall to the ground, but his father helped him to sit down because Plaintiff had hurt his ankle. (Pl. Dep. 22:24; Father Dep. 23:1) Someone called 911 to summon an ambulance, either Plaintiff's father or a bystander. (Pl. Dep. 24:13, 31:15; Father Dep. 24:7)

An ambulance arrived and took Plaintiff to the hospital. (Pl. Dep. 33:13; Father Dep. 27:6) In hospital, doctors put Plaintiff's ankle in a splint, told him that he sprained it, and advised him to stay off of it for one week. (Pl. Dep. 36:23; Father Dep. 28:18) Plaintiff subsequently saw a different doctor who placed him in an air cast and told him that the accident caused ligament damage in the ankle. (Pl. Dep. 48:22; Father Dep. 29:24) Plaintiff next saw another doctor who confirmed that there was ligament damage and recommended surgery. (Pl. Dep. 51:2; Father Dep. 33:3) Plaintiff did in fact undergo surgery in the late summer or early fall of 2009. (Pl. Dep. 53:15; Father Dep. 35:14) All told, Plaintiff suffered discomfort, inconvenience and pain in the accident's aftermath as a result of the ankle injury. (Pl. Dep. 65:7) Even at the moment of Plaintiff's deposition on January 18, 2011, more than two years after the accident, he testified that his ankle still caused him discomfort during various activities, for example, walking up stairs or lying in bed. (Pl. Dep. 79:18)

## II. The Depression

The depression in the parking lot is approximately one foot long by ten inches wide, and is located eight inches from the point where the parking lot meets the sidewalk outside the Restaurant. *Docket No. 26* (Pomara Affidavit ¶ 5). The Parties disagree as to the depth of the depression. Plaintiff contends that the depression is two inches deep. *Id.* ¶ 6. Defendant, on the other hand, contends that the depression is approximately 1.5 inches deep. *Docket No. 27.* As stated earlier in the factual summary of the accident, both Plaintiff and his father testified as to the depression's visibility. Plaintiff's father testified that he saw the depression when he was stepping off the curb, and he stepped aside so his foot would not land inside of it. (Father Dep. 37:25, 38:8) Plaintiff commented that there was nothing blocking

his view of the depression, and that it was a sunny, dry day when the accident occurred, but that he did not see the depression. (Pl. Dep. 20:25) Plaintiff's attorney, Francesco Pomara, contends that Plaintiff could not see the depression because "he was looking straight ahead and was unable to see the hole due to the fact that it is in close proximity to the curb line." *Docket No. 26* (Pomara Affidavit ¶ 5).

Sometime after the accident, Plaintiff and his father returned to the Restaurant to take photographs of the depression, which shed further light on its dimensions and visibility. (Pl. Dep. 14:17; Father Dep. 10:3, 38:22) Plaintiff testified in his deposition that two of the photographs are a particularly fair and accurate representation of the depression at the time of the accident insofar as these photos give a more clear perspective of the depression's depth. (Pl. Dep. 39:7; *Docket No. 26*, App. A (Plaintiff alleges that the photographs marked Defense Exhibits D & E are the most accurate and representative photographs of the depression). Plaintiff's father confirmed in his deposition that all five of the photos are fair and accurate representations of the depression. (Father Dep. 39:5)

## DISCUSSION

### I. Standard of Review on Summary Judgment

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An

issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir.2005) (internal quotation marks & citation omitted). "A fact is 'material' for these purposes when it might affect the outcome of the suit under governing law." *Id.* (internal quotation marks and citation omitted). Thus, no genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Further, a reviewing court must construe the facts in the light most favorable to the nonmoving party, and all reasonable inferences and ambiguities must be resolved against the moving party. *See Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir.2001). Nevertheless, the nonmoving party cannot rest merely on allegations or denials but must instead set out specific facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(c), 56(e); *see also Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir.2001) ("[M]ere speculation and conjecture is [sic] insufficient to preclude the granting of the motion."). The nonmoving party may not rest only on the pleadings. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings."). Instead, each statement of material fact by the movant or opponent must be followed by citation to admissible evidence. *See* Fed.R.Civ.P. 56(c), 56(e); Local Civil Rule 56.1(d).

Thus, in deciding a motion for summary judgment, the court's task is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## II. Analysis

■■■ New York law applies to the state law claims brought in this diversity action. A landowner "must act as a reasonable person in maintaining his or her property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury and the burden of avoiding the risk." *Cupo v. Karfunkel*, 1 A.D.3d 48, 767 N.Y.S.2d 40, 42 (App.Div.2d Dep't 2003) (citations & quotations omitted). "To impose liability upon a defendant in a trip-and-fall action, there must be evidence that a dangerous or defective condition existed, and that the defendant either created the condition or had actual or constructive notice of it." *Sermos v. Gruppuso*, 95 A.D.3d 985, 944 N.Y.S.2d 245, 246 (App.Div.2d Dep't 2012). "Further, it must be established that a defendant landowner gave insufficient warning of any latent, dangerous condition on his or her property, since such warning is a natural counterpart to his or her duty to maintain his property in a reasonably safe condition." *Id.* (citations & quotations omitted).

■■■ "Whether a dangerous or defective condition exists on the property of another so as to create liability depends on the circumstances of each case and is generally a question of fact for the jury." *Delaney v. Town Sports Int'l*, 88 A.D.3d 635, 930 N.Y.S.2d 247, 248 (App.Div.2d Dep't 2011) (citing *Perez v. 655 Montauk, LLC*, 81 A.D.3d 619, 916 N.Y.S.2d 137, 137 (App.Div.2d Dep't 2011)). Although some defects are trivial and "not every injury allegedly caused by an elevated brick or slab need be submitted to a jury," a "mechanistic disposition of a case based exclusively on the dimension of the sidewalk defect is unacceptable." *Trincere v. County of Suffolk*, 90 N.Y.2d 976, 976, 665 N.Y.S.2d 615, 688 N.E.2d 489 (1997). In *Trincere*, the New York Court of Appeals cautioned that "there is no 'minimal dimension test' or *per se* rule that a defect must be of a certain minimum height [or depth] in order to be actionable." 90 N.Y.2d at 978, 665 N.Y.S.2d 615, 688 N.E.2d 489 (citations omitted). The right analysis for whether a claim is actionable is to examine "the facts presented, including the width, depth, elevation, irregularity and appearance of the defect along with the 'time, place and circumstance' of the injury." *Id.* (citing *Caldwell v. Village of Is. Park*, 304 N.Y. 268, 274, 107 N.E.2d 441 (1952)). In so stating, the *Trincere* Court emphasized the fact-specific nature of trip-and-fall claims in which liability is largely based on defects in premises. *Id.* at 976, 665 N.Y.S.2d 615, 688 N.E.2d 489.

■■■ It is Defendant's position that it is entitled to summary judgment because the depression at issue in this litigation is a trivial defect. Defendant argues that although a business owner must ensure that its premises are reasonably safe, business owners are not liable for "trivial defects . . . over which a pedestrian might merely stumble, stub his or her toes, or trip." *Taussig v. Luxury Cars of Smithtown, Inc.*, 31 A.D.3d 533, 818 N.Y.S.2d 593, 593 (App.Div.2d Dep't 2006) (upholding trial court's grant of summary judgment in favor of defendant business owner on grounds that alleged defect was trivial). Here, Plaintiff's version of the facts, supported by testimony and photographs is that the depression was significant enough to cause him to take a fall and twist his ankle. Based on the present record, a

jury could decide that the defect was not trivial.

Nonetheless, Defendant seizes upon one aspect of *Trincere's* language—that certain defects are trivial and not actionable—to argue that the parking lot depression at issue in this case qualifies as trivial. In so arguing, Defendant cites to *D'Nelson v. Costco Wholesale Corp.*, 2006 WL 767866, at *1 (E.D.N.Y. Mar. 24, 2006), in which Magistrate Judge Pollak denied the defendant's motion for summary judgment in a fall case where the plaintiff tripped on a ½ inch rise in a store floor as she came off of an escalator. Defendant argues that summary judgment is proper here, as opposed to in *D'Nelson*, because here, Plaintiff was walking on stable ground when he fell, and not coming off a moving escalator.

Defendant's citation of this single case ignores the *Trincere* emphasis that each trip-and-fall case is fact-specific beyond one or two factors, and that the absence of the moving escalator in the instant case does not alone support summary judgment in Defendant's favor. In cases bearing facts similar to the instant case, New York courts have denied a defendant's summary judgment and allowed the case to proceed to the jury. *See, e.g., Delaney*, 930 N.Y.S.2d at 249 (denying the defendant's summary judgment motion arguing that a 1% inch raised platform was a trivial defect in a trip-and-fall suit); *McFadden v. New Castle Hotel, LLC*, 101 A.D.3d 1767, 955 N.Y.S.2d 920, 920 (App.Div.4th Dep't 2012) (denying defendant's summary judgment motion because defendant failed to meet its burden of establishing as a matter of law that the alleged defect, a lip on a drain, was too trivial to constitute a dangerous condition); *Guidone v. Town of Hempstead*, 94 A.D.3d 1054, 942 N.Y.S.2d 632, 632–33 (App.Div.2d Dep't 2012) (reversing lower court's grant of summary judgment for the defendants, finding that the defendant had not shown as a matter

of law that the "crack or slot in the grassy area between the curb and sidewalk" was trivial). That is because, as *Trincere* made clear, these cases are not decided on the sole measurement of a sidewalk or surface rise or dip.

In the present case it seems that the Parties conflate the question of whether the defect was trivial with whether the defect was open and obvious. *Docket Nos. 25, 26.* However, these two legal doctrines are in fact quite separate questions. The question of triviality is discussed above. The open and obvious doctrine is the idea that a party may only be partially or not at all liable for an injury relating to a defect where the defect was so "open and obvious" that it is unreasonable for the injured party not to have taken note of it and taken action to avoid the defect and thus the injury. For example, in *Pirie v. Krasinski*, 18 A.D.3d 848, 796 N.Y.S.2d 671, 673 (App.Div.2d Dep't 2005), the court affirmed the trial court's grant of the defendant's summary judgment motion in a trip-and-fall case not because of the alleged defect's triviality, but because the plaintiff fell over a dip in the floor as a result of looking at an architectural detail on the ceiling instead of where she was stepping. Similarly, in *Pedersen*, 724 N.Y.S.2d at 777, the court affirmed the trial court's grant of the defendant's summary judgment motion because the plaintiff, who fell of an eight-inch high platform, "was not looking where she was going just before she fell."

The "open and obvious" doctrine has recently been clarified in New York State. In *Cupo v. Karfunkel*, 1 A.D.3d 48, 767 N.Y.S.2d 40, 40 (App.Div.2d. Dep't 2003), the court ruled that "the open and obvious nature of an allegedly dangerous condition is relevant to the issue of the comparative fault of the plaintiff and does not preclude a finding of liability against the landown-

er." *See Pedersen v. Kar, Ltd.*, 283 A.D.2d 625, 724 N.Y.S.2d 776, 777 (App. Div.2d Dep't 2001) ("A property owner has no duty to warn of dangers that are readily observable by the reasonable use of one's senses.").

The factual record that the Parties submitted to the Court raises questions about Plaintiff's responsibility under open and obvious inquiry. Plaintiff's accident occurred on a sunny, dry day; no other pedestrians crowded the area to obscure Plaintiff's view of the depression; Plaintiff's father saw the allegedly large and deep depression under these same conditions and stepped to the side of the depression with facility; Plaintiff's photographs of the depression show that it was deep enough that water and parking lot trash collected (at least at the moment of the photography) in the depression, making it stand out from the surrounding pavement. None of these facts would undermine Defendant's liability if a jury in fact finds that the depression is dangerous or defective, but they may have impact on the degree of Plaintiff's comparative liability under *Cupo* depending on how a jury perceives them. *See Mauriello v. Port Auth. of N.Y. & N.J.*, 8 A.D.3d 200, 779 N.Y.S.2d 199, 199 (App.Div.1st Dep't 2004) (finding that the defendants failed to demonstrate that an obstacle measuring ten inches high was open and obvious such that they were entitled to summary judgment because, among other things, there were crowds of people in the terminal obscuring his view); *Panebianco v. N.Y.*, No. 2012–040–100, Claim No. 114711, 38 Misc.3d 1218(A), 2012 WL 6965368 (N.Y.Ct.Cl. Dec. 18, 2012) (dismissing the plaintiff's lawsuit arising out of her fall into a gorge, holding that the gorge's danger was "open, obvious, and manifest" such that the defendant breached no duty to post warning signs or barriers).

Here, there are questions of material fact as to the characteristics of the defect and their contribution to the injury, if any, and how visible, open and obvious the defect was. A jury should decide those facts. Accordingly, this Court recommends that the District Court deny Defendant's motion for summary judgment.[1] *See Bolloli v. Waldbaum, Inc.*, 71 A.D.3d 618, 896 N.Y.S.2d 400, 400 (App.Div.2d Dep't 2010) (affirming the lower court's denial of defendant's summary judgment motion on a similar parking-lot-pothole-injury claim); *compare Dick v. The Gap, Inc.*, 16 A.D.3d 615, 792 N.Y.S.2d 194, 194 (App.Div.2d Dep't 2005) (affirming the lower court's grant of defendant's summary judgment motion on the triviality of the defect because the plaintiff's deposition testimony that the pavement defect was two inches deep was belied by photographs, and at the time of the incident, foot traffic was mild, it was neither raining nor snowing, and nothing obstructed her view).

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion for summary judgment be denied in its entirety.

This Chambers has served a copy of this Report and Recommendation upon the Parties through their counsel, who receive such service through ECF. Any objections to the recommendations made in this Re-

---

1. This Court's recommendation that Defendant is not entitled to summary judgment on the question of whether the defect was trivial does not address the possibility that the defect was unknown to Defendant as it is not raised in the motion. *See Curiale v. Sharrotts Woods, Inc.*, 9 A.D.3d 473, 781 N.Y.S.2d 47, 47 (App.Div.2d Dep't 2004) (stating that "[a]n owner of premises cannot be held liable for injuries caused by an allegedly defective condition unless the plaintiff establishes that the owner either created or had actual or constructive notice of the condition").

port & Recommendation must be made on or before February 21, 2013, which is within fourteen days after electronic service of the Report. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(2). District Judge Matsumoto's Individual Rules require that Parties supply her Chambers with hard courtesy copies of any such objections, in addition to ECF filing. Failure to file timely objections may waive the right to appeal the District Court's order. *See* Fed.R.Civ.P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989) (discussing waiver under the former ten-day limit). Any request for additional time to file objections must be made to the District Judge.

SO ORDERED.