Germelia JOSEPH, Plaintiff,

v.

**HDMJ RESTAURANT, INC., Defendant.**

No. 09–CV–0240 (JS)(AKT).

United States District Court, E.D. New York.

Sept. 9, 2013.

Edward Lee Sample, II, Esq., Frank & Associates, P.C., Farmingdale, NY, for Plaintiff.

No appearance for Defendant.

*MEMORANDUM & ORDER*

SEYBERT, District Judge:

Presently before the Court is Magistrate Judge A. Kathleen Tomlinson's Report and Recommendation ("R & R"), issued on August 19, 2013. For the following reasons, the Court ADOPTS this R & R in its entirety.

*BACKGROUND*

Plaintiff Germelia Joseph ("Plaintiff") commenced this action on January 20, 2009, against HDMJ Restaurant, Inc. ("HDMJ"), George Athanasopoulos, Gus Athanasopoulos, and Peter Athanasopoulos (collectively, "Defendants"), asserting claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law. § 29, *et seq.*, and New York Labor Law. In March 2009, Defendants filed motions to dismiss the Complaint (Docket Entries 8, 11), which were granted in part and denied in part by the Court on October 19, 2009 (Docket Entry 18). The Court granted the motions to the extent that they sought dismissal of Plaintiff's

**138**

NYHRL and Labor Law claims as well as all claims against George, Gus, and Peter Athanasopoulos. The Court denied the motions to the extent that they sought the dismissal of the ADA and Title VII claims against HDMJ.

HDMJ did not file an answer to the Complaint. Rather, in July 2012, counsel for HDMJ sought leave to withdraw. (Docket Entry 31.) HDMJ's principle, Gus Athanasopoulos, did not oppose the request, and Judge Tomlinson granted the application on the record on August 2, 2012 (Docket Entry 34.) In granting the application, Judge Tomlinson warned Gus that a corporation cannot represent itself *pro se* and granted HDMJ thirty days to obtain new counsel. (Docket Entry 34.) Judge Tomlinson held a status conference on September 6, 2012. (Docket Entry 38.) No counsel appeared on behalf of HDMJ, and HDMJ's principles, Gus, George, Peter, and James Athanasopoulos, advised Judge Tomlinson that they had no intention of retaining new counsel.

On November 27, 2012, Plaintiff moved for an entry of default against HDMJ, which was entered by the Clerk of the Court on that same day. (Docket Entries 44–45). On December 5, 2012, Plaintiff moved for default judgment (Docket Entry 46), and on December 17, 2012, the Court referred Plaintiff's motion to Judge Tomlinson for an R & R (Docket Entry 47.)

Judge Tomlinson issued her R & R on August 19, 2013, recommending that Plaintiff's motion for default judgment be granted in part and denied in part: granted with respect to Plaintiff's Title VII claims and denied with respect to Plaintiff's ADA claims. She further recommended that damages be awarded to Plaintiff as follows: (1) $10,650.00 in back pay; (2) pre-judgment interest on the back pay running from December 12, 2005 at an annual rate of 3.37%, to be compounded annually; (3)

$30,000.00 in compensatory damages; and (4) $4,371.75 in attorney's fees.

No party has objected to any portion of Judge Tomlinson's R & R.

## DISCUSSION

In reviewing an R & R, a district court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no timely objections have been made, the "court need only satisfy itself that there is no clear error on the face of the record." *Urena v. New York*, 160 F.Supp.2d 606, 609–10 (S.D.N.Y. 2001) (internal quotation marks and citation omitted).

Here, no party has objected to Judge Tomlinson's R & R, and the Court finds it to be correct, comprehensive, well-reasoned and free of any clear error. Accordingly, the Court ADOPTS Judge Tomlinson's R & R in its entirety.

## CONCLUSION

Judge Tomlinson's R & R is ADOPTED in its entirety, and Plaintiff's motion for a default judgment against HDMJ is GRANTED IN PART. It is hereby ORDERED that judgment be entered on Plaintiff's Title VII claims against HDMJ in the amount of: (1) $10,650.00 in back pay, plus pre-judgment interest running from December 12, 2005 through the entry of judgment at an annual rate of 3.37%, to be compounded annually; (2) $30,000.00 in compensatory damages; and (3) $4,371.75 in attorney's fees. It is further ORDERED that Plaintiff's ADA claims are DISMISSED WITH PREJUDICE.

The Clerk of the Court is directed to enter judgment consistent with this Memorandum and Order and to mark this matter CLOSED.

SO ORDERED.

## REPORT AND RECOMMENDATION

A. KATHLEEN TOMLINSON, United States Magistrate Judge:

### I. PRELIMINARY STATEMENT

Plaintiff Germelia Joseph brings this action against Defendant HDMJ Restaurant, Inc. ("Defendant" or "HDMJ"), seeking redress for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), 42 U.S.C. § 2000e *et seq.* On December 5, 2012, Plaintiff moved for a default judgment against the Defendant. DE 46. By Order dated December 17, 2012, Judge Seybert referred Plaintiff's motion to this Court for a Report and Recommendation as to whether Plaintiff has demonstrated that the allegations in the Complaint establish Defendant's liability such that the motion for default should be granted, and if so, what damages, costs, and/or fees, if any, should be awarded. *See* Electronic Order, Dec. 17, 2012.

### II. PERTINENT FACTS

Plaintiff is a black female of Haitian national origin. Compl. at 6. Plaintiff was employed as a waitress at HDMJ Restaurant, operated by Defendant HDMJ, from at least March 2004 until January 23, 2006. Compl. at 3, 6, 10. HDMJ Restaurant is owned by former defendants George Athanasopoulos ("George"), Gus Athanosopoulos ("Gus"), and Peter Athanasopoulos ("Peter") (collectively, the "Owners"). Compl. at 7. At all times relevant to the Complaint, George was Plaintiff's supervisor. Compl. at 1. Defendant employs more than 15 employees. Compl. at 1.

During Plaintiff's course of employment, the Owners insulted and abused Plaintiff on numerous occasions. Compl. at 3, 8–10. George constantly cursed at Plaintiff, calling her a "f*****g bitch", "n****r" and "malvos." Compl. at 8.[1] Further, the Owners repeatedly asked Plaintiff to perform oral sex on them. Compl. at 8–9. Gus demanded oral sex from Plaintiff on numerous occasions. Compl. at 8. On one occasion, Gus called Plaintiff into the kitchen and told Plaintiff to "feel him" because he was not wearing any underwear and he wanted Plaintiff to give him a "blow job." *Id.* Peter spoke frequently about "what he did with his girlfriend" and how much he liked the "blow jobs." *Id.* One day Peter pulled a knife from his belt pocket and told Plaintiff, "look this is the knife I use to cut the throats of waitresses who refuse to give me a blow job." Compl. at 8–9. On numerous occasions, George grabbed his crotch and would tell Plaintiff "here, suck my dick." Compl. at 8. When Plaintiff complained about this behavior to Gus he said it was a "joke for n****rs." *Id.* Once, a busboy asked Plaintiff to perform oral sex on him. Compl. at 9 Plaintiff reported the behavior to Gus, but instead of reprimanding the busboy, Gus sent Plaintiff home and did not permit her to return to work for 12 days. *Id.*

In February 2005, Plaintiff suffered a knee injury in a car accident. Compl. at 9. The Owners were aware of Plaintiff's accident and that she had surgery on her knee. *Id.* On January 22, 2006, Plaintiff was not being assigned any tables to serve. *Id.* When Plaintiff asked Peter why she was not being assigned any tables, he said that white girls were supposed to make more money than foreign blacks. *Id.* He

---

1. Although not defined in the Complaint, according to Plaintiff, "malvos" is a derogatory Greek term for black women meaning "black bitch" or "Haitian bitch." *See* Affidavit of Germelia Joseph in Support of her Mot. for Default Judgment ("Joseph Aff.") [DE 49] ¶ 12.

then became angry and pulled Plaintiff down a flight of stairs to curse and yell at her. *Id.* Plaintiff was limping and when Peter grabbed her she told him that she could not go down the stairs. *Id.* Peter responded, saying that he did not "give a f\*\*k" and did not care that Plaintiff was hurt. *Id.* Peter stated that it was his "f\*\*\*\*\*g business and he could do whatever the f\*\*\*he wanted." *Id.* Plaintiff complained to Gus about this incident but no action was taken on Plaintiff's behalf. *Id.* However, the following day, on January 23, 2006, George fired Plaintiff. Compl. at 10. George told Plaintiff that Gus had informed him of her complaint against Peter and that George no longer wanted her there. Compl. at 10. Plaintiff alleges damages as a result of the foregoing incidents. Compl. at 7.

### III. *PROCEDURAL HISTORY*

Plaintiff, proceeding *pro se,* filed her Complaint on January 20, 2009 against HDMJ and the Owners alleging race, color, national origin, sex and disability discrimination under the ADA and Title VII, as well as state law claims under the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL"), and N.Y. Labor Law § 740. *See* Compl. at 1–5. In March 2009, HDMJ and the Owners moved to dismiss the action. DE 8, 9, 11, 12, 13. The motions to dismiss were granted in part and denied in part. *See Joseph v. HDMJ Restaurant, Inc.,* 685 F.Supp.2d 312 (E.D.N.Y.2009) (decision on motion to dismiss). Judge Seybert dismissed Plaintiff's state law claims in their entirety. *Id.* at 317. With respect to HDMJ, Plaintiff's Title VII and ADA claims were permitted to proceed. *Id.* at 315–317. However, finding that there is no individual liability under Title VII and the ADA, Judge Seybert dismissed those claims against the Owners, leaving HDMJ as the sole remaining defendant. *Id.* at

317–18. An interlocutory appeal was certified on behalf of HDMJ, but was later withdrawn at HDMJ's request due to a lack of resources. DE 19–26.

On July 3, 2012, Defendant's attorney moved to withdraw as counsel for HDMJ. *See* DE 31. On July 31, 2012, this Court held a hearing with the parties and, after providing counsel as well as the Athanasopoulos brothers a full opportunity to be heard, granted the motion of the Law Offices of David Feather to be relieved as counsel in this case. DE 34. The Court advised Gus Athanasopoulos, HDMJ's principal, that the corporation could not proceed *pro se* in this action by law. *Id.* The Court gave HDMJ 30 days to obtain new counsel. *Id.* Further, the Court mailed individual copies of the Civil Conference Minute Order of the July 31, 2012 conference to Defendant's four shareholders, George, Peter, Gus, and James Athanasopoulos. *Id.*

At a status conference held on September 18, 2012, Defendant's four shareholders represented to the Court that they would not hire new counsel to represent HDMJ and would not defend the corporation against this lawsuit. DE 38. The Court questioned each shareholder under oath to verify his understanding of the consequences of failing to defend HDMJ and further explained the ramifications should Plaintiff move for a default judgment as a result. *Id.* Notwithstanding the Court's cautionary instructions, the Athanasopoulos brothers declined to change their position. *Id.* The Court then advised Plaintiff that she could proceed to file a motion for default judgment against HDMJ if she chose. *Id.* On October 24, 2013, attorney Edward Sample filed a Notice of Appearance on behalf of Plaintiff. DE 41. The instant motion followed. DE 46.

**IV. LEGAL STANDARD**

 "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to Fed.R.Civ.P. 55(b), as Plaintiff has done here. *See Kiewit Constructors, Inc. v. Franbuilt, Inc.*, No. 07–CV–121A, 2007 WL 4405029, at *2 (W.D.N.Y. Dec. 14, 2007); *Fashiontv.com v. Hew*, No. 06 CV 3200, 2007 WL 2363694, at *2 (S.D.N.Y. Aug. 17, 2007). A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Gurung v. Malhotra*, 279 F.R.D. 215, 221 (S.D.N.Y.2011); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06–CV–1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993)). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05–CV–0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir.1995)).

 The determination of a motion for default judgment is left to the sound discretion of the district court. *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir.1999); *Merrill Lynch Bus. Fin. Servs., Inc. v. Brook Island*, No. 06 CV 5912, 2010 WL 2787553, at *3 (E.D.N.Y. July 14, 2010). As the Second Circuit notes, when determining whether to grant a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–171 (2d Cir.2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993). These factors are: (1) "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02 Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted). The court analyzes the three factors necessary for the entry of a default judgment below.

**A. Willfulness**

 In general, a "willful and deliberate disregard for [court] orders ... militates in favor of default judgment." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F.Supp.2d 114, 123–24 (E.D.N.Y.2011); *see also H. Daya Int'l Co., Ltd. v. Do Denim LLC*, 11 CIV. 4028, 2012 WL 2524729, at *4 (S.D.N.Y. June 29, 2012) ("Continued noncompliance with a court order suggests willfulness."). This includes where, as here, a corporation fails to comply with a court order to obtain counsel. *See Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir.1991) (finding partnership's willful and "cavalier disregard" for court order to obtain counsel constituted failure under Rule 55(a) to "otherwise defend"); *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir.2001) (upholding default judgment where individual and corporate defendants did not obtain counsel in the time frame ordered by the court); *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 336 (2d Cir.1986) (finding that there was "no question" that de-

fault was properly entered where corporate defendant failed to comply with court's order to obtain new counsel); *S & S Mach. Corp. v. Wuhan Heavy Duty Mach. Tool Group Co., Ltd.*, No. 07–CV–4909, 2012 WL 958527, at *3 (E.D.N.Y. Mar. 21, 2012) (noting that where a court has ordered a corporate entity to appear through counsel, it is appropriate to enter a default judgment when the entity willfully disregards the court order); *Next Proteins, Inc. v. Distinct Beverages, Inc.*, No. 09 CV 4534, 2012 WL 314871, at *2 (E.D.N.Y. Feb. 1, 2012) (granting motion for default judgment where over seven months had passed since counsel for defendant withdrew and because defendant had since failed to appear by counsel despite numerous allowances by the court); *H. Daya Int'l Co.*, 2012 WL 2524729, at *4 (finding default willful where limited liability corporations failed to retain new counsel despite "requirements of the law" and court order); *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07 CV 3956, 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010) ("The presence of a disregarded Order is determinative in granting default judgment against a corporate entity that fails to retain counsel."), *report and recommendation adopted,* No. 07 CV 3956, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010).

Here, although the corporate defendant, HDMJ, initially retained counsel and filed a timely response to the Complaint, the corporation's counsel has since withdrawn from this action with the approval of the Court. *See* DE 34. At the September 18, 2012 Status Conference, the Court addressed this issue as follows:

> On July 31, 2012, after vetting the motion by defendants' counsel, this Court issued an order granting the motion by Attorney David Feather to be relieved as counsel in this case. The defendant Corporation was given 30 days to obtain counsel and Gus Athanasopoulos was advised that under the law, the Corporation cannot proceed pro se. Therefore, the Corporation was directed to get new counsel and to have that new counsel appear before the Court at a September 6, 2012 conference. For unrelated reasons, the September 6 conference had to be rescheduled to today.

> When the case was called today, no counsel appeared on behalf of the Corporation. The four individual shareholders of defendant HDMJ did appear, but made it clear that the shareholders will not be hiring counsel to represent the Corporation. Each of the four brother-shareholders was sworn in and asked various questions by the Court regarding their shareholder status, what officer position they held in the Corporation, the potential consequences of not defending [the Cor]peration, the right of the plaintiff to move for a default judgment if the Corporation declines to participate in the case and fulfill its discovery obligations, etc., and the consequences of a potential default judgment. After concluding the questioning, the brother-shareholders all confirmed again that they do not wish to have this litigation proceed vis-à-vis the Corporation. Each also expressed his understanding of the likelihood of plaintiff's filing a motion for a default judgment against the Corporation.

> Once the questioning was concluded and the sworn responses of the shareholders were placed on the record, I advised plaintiff that she was free to proceed with a motion for default judgment against the Corporation in this action. If the plaintiff intends to make such a motion, that motion must be filed before Judge Seybert no later than October 22, 2012. Plaintiff is also required to serve a copy of the motion papers on each of

the four shareholders by that October 22 date.

DE 38. As of the date of this Order, nearly one year has passed since this Court granted the request of counsel to withdraw as attorney for HDMJ. The corporate defendant has failed to appear by counsel and repeatedly ignored this Court's cautionary instructions and Orders by failing to obtain counsel. A certificate of default has been entered against Defendant. DE 45. Moreover, HDMJ has not opposed this motion for entry of a default judgment. HDMJ's conduct is indisputably willful. *See Next Proteins*, 2012 WL 314871, at *2; *see also Eagle Assocs.*, 926 F.2d at 1310; *Powerserve*, 239 F.3d at 514; *Dow Chem.*, 782 F.2d at 336; *S & S Mach.*, 2012 WL 958527, at *3; *Rodriguez*, 784 F.Supp.2d at 123–24; *H. Daya Int'l Co.*, 2012 WL 2524729, at *4; *Franco*, 2010 WL 3780972, at *3.

**B. Meritorious Defense**

Next, the Court must consider whether Defendant has a meritorious defense. "A defense is meritorious if it is good at law so as to give the fact finder some determination to make." *American Alliance Ins. Co. v. Eagle Ins. Co. Ltd.*, 92 F.3d 57, 61 (2d Cir.1996) (quotations omitted); *see Pighini v. Pighini*, No. CV 11–5416, 2013 WL 572224, at *3 (E.D.N.Y. Jan. 25, 2013). While a defendant need not establish his defense conclusively, he must "present evidence of facts that, if proven at trial, would constitute a complete defense." *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir.1998) (citations omitted) (internal quotation marks omitted). Evidence beyond mere "conclusory denials" is required. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 Fed. Appx. 453, 456 (2d Cir.2011) (citing *Pecarsky v. Galixiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir.2001)).

Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment. *See Empire State Carpenters Welfare, et. al. v. Darken Architectural Wood*, No. 11–CV–46, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012); *Mack Fin. Serv. v. Poczatek*, No. CV–10–3799, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011). Indeed, where a defendant has presented no defense to the court, the allegations in a plaintiff's complaint are deemed admitted. *See Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007).

Here, although Defendant never answered the Complaint, it raised certain objections in its motion to dismiss. Primarily, Defendant argued that *res judicata* precluded the Plaintiff from bringing this action since Plaintiff had already received a determination on her claims from the New York State Division of Human Rights. *See* DE 12. As noted, the motions to dismiss were granted in part and denied in part. *See Joseph*, 685 F.Supp.2d 312. Judge Seybert dismissed Plaintiff's state law claims in their entirety, and dismissed Plaintiff's Title VII and ADA claims against the Owners. *Id.* at 317–18. With respect to HDMJ, however, Plaintiff's Title VII and ADA claims were permitted to proceed. *Id.* at 315–317. An interlocutory appeal was certified on behalf of HDMJ, but was later withdrawn at its request due to a lack of resources. DE 19–26. Subsequent to Judge Seybert's ruling on the motions to dismiss and the withdrawal of Defendant's appeal, HDMJ never interposed an answer. Thus, the allegations in Plaintiff's Complaint with respect to her Title VII and ADA claims

against HDMJ are deemed admitted. *See Indymac Bank,* 2007 WL 4468652, at *1.

Plaintiff served the Order denying the motions to dismiss upon Defendants on September 20, 2010, via registered first-class mail. *See* DE 238. Under the Federal Rules, Defendants were obligated to then serve an answer within 14 days of their receipt of Judge Seybert's Order. Fed.R.Civ.P. 12(a)(4)(a). As noted above, none of these Defendants answered the Second Amended Complaint, nor did they request an extension of time to respond. Defendants' failure to answer sufficiently demonstrates willfulness, particularly in light of the admonitions given to the four shareholders on the record in open court and the responses they provided under oath. *See McNulty,* 137 F.3d 732, 738 (2d Cir.1998); *see also Indymac Bank* 2007 WL 4468652, at *1.

██ Even if a plaintiff's claims are deemed admitted, a plaintiff must demonstrate that the allegations set forth in the complaint state valid claims. *See Said v. SBS Elecs., Inc.,* No. CV–08–3067, 2010 WL 1265186, at *2 (E.D.N.Y. Mar. 31, 2010) ("With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."); *J & J Sports Prods., Inc. v. Daley,* No. CV–06–0238, 2007 WL 7135707, at *3–4 (E.D.N.Y. Feb. 15, 2007) ("[C]onclusory allegations based on information and belief" are insufficient to support a finding of default-based liability.). Thus, the Court examines each of Plaintiff's claims, in turn, to determine if the allegations set forth in the Complaint state valid claims.

### 1. Title VII

Discrimination claims under Title VII and the ADA are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It is the plaintiff's burden to establish a *prima facie* case of discrimination. *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 102 (2d Cir.2001); *Lewis v. Erie Cnty. Med. Ctr. Corp.,* 907 F.Supp.2d 336, 346 (W.D.N.Y.2012). Once established, a rebuttable presumption of discrimination arises and the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Byrnie,* 243 F.3d at 102; *Lewis,* 907 F.Supp.2d at 346. Based on the allegations in the Complaint, Plaintiff asserts claims under Title VII for hostile work environment discrimination and retaliation. The Court examines each of Plaintiff's claims in turn.

#### a. Hostile Work Environment

██ Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citing 42 U.S.C. § 2000e–2(a)(1)). The phrase "terms, conditions, or privileges of employment" evinces a congressional intent " 'to strike at the entire spectrum of disparate treatment of men and women' " in employment. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (citing *Los Angeles Dep't of Water and Power v. Manhart,* 435 U.S. 702, 707, n. 13, 98 S.Ct. 1370, 1375, n. 13, 55 L.Ed.2d 657 (1978)). When the work-

place is permeated with discriminatory intimidation, ridicule which is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment violates Title VII. *See Alfano v. Costello,* 294 F.3d 365, 373 (2d Cir.2002) (quoting *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997)); *Harris,* 510 U.S. at 21, 114 S.Ct. 367.

 The hostile work environment standard is a middle ground between conduct that is merely offensive and behavior which causes a tangible psychological injury. *Harris,* 510 U.S. at 21, 114 S.Ct. 367. The inquiry has objective and subjective elements: "the misconduct must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir.2003) (citing *Alfano,* 294 F.3d at 374; *Harris,* 510 U.S. at 21, 114 S.Ct. 367). Factors such as frequency of the discriminatory conduct, its severity, and whether it unreasonably interferes, humiliates, or threatens an employee's work performance are used to determine whether an environment is sufficiently hostile. *Ashcroft,* 336 F.3d at 148 (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano,* 294 F.3d at 374 (quoting *Perry,* 115 F.3d at 149). A corporation can be held vicariously liable for a hostile environment created by a supervisor with authority over the employee. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 777, 118 S.Ct. 2275, 2278–79, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995).

 In this case, during Plaintiff's employment with Defendant, the Owners subjected Plaintiff to lewd and abusive behavior. Again, the Court accepts these allegations from the Complaint as true for purposes of this motion for default judgment. The Complaint states that George Athanasopoulos constantly cursed at Plaintiff, calling her racially and sexually derogatory names. The Owners repeatedly asked Plaintiff to perform oral sex on them. Gus Athanasopoulos demanded oral sex from Plaintiff on multiple occasions and once requested that Plaintiff "feel him" because he wasn't wearing underwear. George demanded oral sex from Plaintiff on many occasions, telling Plaintiff to "suck my dick." Peter Athanasopoulos threatened Plaintiff with a knife because she would not perform oral sex on him. Such actions go far beyond merely offensive conduct and are sufficient for a reasonable person to find her work environment abusive and hostile in violation of Title VII.

Plaintiff subjectively perceived her work environment to be hostile, as evidenced by her complaints about the unlawful behavior. Plaintiff notified Gus when a busboy working at HDMJ told her to perform oral sex on him. Rather than rectify the situation, Gus sent Plaintiff home for twelve days. Plaintiff also notified Gus that Peter had dragged her down the stairs to curse and yell at her. She was terminated the next day. Further, by complaining about her treatment in the workplace, Plaintiff made it sufficiently clear that her employers' lewd behavior was negatively affecting her work environment.

 As noted, Defendant HDMJ can be held vicariously liable for a hostile work environment created by a supervisor with authority over the employee. *See Faragher,* 524 U.S. at 777, 118 S.Ct. 2275; *Burlington Indus.,* 524 U.S. at 765, 118 S.Ct.

146

2257. Gus, Peter, and George's conduct was sufficiently severe and pervasive individually and collectively to create a hostile work environment. George, Plaintiff's direct supervisor, constantly called Plaintiff racially and sexually derogatory names and requested oral sex from Plaintiff. Although *Ellerth* and *Faragher* enable an employer to raise an affirmative defense if the employer exercised reasonable care to prevent any discriminatory conduct, such a defense is unavailable when a tangible employment action is taken. *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 278, 129 S.Ct. 846, 852, 172 L.Ed.2d 650 (2009). No such affirmative defense has been asserted here, and such defense is unavailable in these circumstances because Plaintiff was terminated the day after her altercation with Peter. Based on each of the foregoing factors, Plaintiff has sufficiently stated the elements of a valid claim for hostile work environment under Title VII.

### b. Retaliation

Title VII is violated when a retaliatory motive plays a part in the discharge or when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist. *Hicks v. Baines*, 593 F.3d 159, 164–65 (2d Cir. 2010); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996) (citing *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993)); *Terry*, 336 F.3d at 140–41. The clause in the section of Title VII which addresses retaliation states that it is "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter." *Crawford*, 555 U.S. at 274, 129 S.Ct. 846 (quoting 42 U.S.C. § 2000e–3(a)). To establish a prima facie case for retaliation, a plaintiff must show that (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Mills v. Southern Conn. State Univ.*, 519 Fed. Appx. 73, 75–76 (2d Cir.2013); *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013); *Reed*, 95 F.3d at 1178 (citing *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988)).

An activity is considered to be a protected activity if: (1) an employee has a good faith, reasonable belief that the underlying employment practice was unlawful; and (2) the employer either did not provide a reasonable avenue for complaint or knew of the harassment but did nothing about it. *Reed*, 95 F.3d at 1178; *see Crawford*, 555 U.S. at 276, 129 S.Ct. 846 (finding employee's statement to her employer criticizing her co-workers' sexually obnoxious behavior towards her to be within the opposition clause and therefore a protected activity); *see also Cosgrove*, 9 F.3d at 1039; *Kelly*, 716 F.3d 10, 14. To impute liability to an employer for an employee's actions, the Court is expected to apply common law principles of agency. *See Staub v. Proctor Hosp.*, — U.S. —, 131 S.Ct. 1186, 1191, 179 L.Ed.2d 144 (2011); *see also Kolstad v. American Dental Ass'n*, 527 U.S. 526, 527, 119 S.Ct. 2118, 2121, 144 L.Ed.2d 494 (1999); *Reed*, 95 F.3d at 1180 (citing *Meritor*, 477 U.S. at 72, 106 S.Ct. 2399); *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir.2009) (citing *Torres v. Pisano*, 116 F.3d 625, 636–37 (2d Cir. 1997)); *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 91–92 (2d Cir.2002). Courts

"have interpreted these principles to require that 'a plaintiff ... prove that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it' in order for the employer to be held liable." *Reed*, 95 F.3d at 1180 (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir.1992)); *see also Scoppettone v. Mamma Lombardi's Pizzico, Inc.*, 523 Fed.Appx. 73, 74–75 (2d Cir.2013) (citing *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir.1994)); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir.2011).

 Plaintiff was engaged in a protected activity when she complained directly to the Owners about their discriminatory and harassing behavior. Plaintiff was repeatedly told by the Owners, and on one occasion by a busboy, to perform oral sex on them. Gus routinely asked Plaintiff to perform oral sex on him. Further, Peter pulled Plaintiff down a flight of stairs, cursed at her, and ridiculed her after she inquired about why she was not being assigned any tables to serve. A person in Plaintiff's position would reasonably believe that such behavior is prohibited in the workplace, and it is evident from the allegations in the Complaint that the Owners knew of the harassment and even perpetuated the discriminatory behavior rather than attempt to alleviate it.

 Further, George fired Plaintiff the day after her altercation with Peter. Plaintiff was terminated because she opposed the Owners' actions. The termination was discriminatory and constitutes an unlawful employment practice prohibited by Title VII. Plaintiff was terminated because she refused her employer's sexual advances and demands for sexual favors and complained about the way she was treated in the workplace. Thus, Plaintiff has sufficiently alleged the elements for a valid claim of retaliation under Title VII.

### 2. The ADA

 The Americans with Disabilities Act ("ADA") prohibits discrimination against any "qualified individual with a disability because of the disability of such individual in regard to," *inter alia*, "discharge of employees." *Giordano v. City of N.Y.*, 274 F.3d 740, 747 (2d Cir.2001) (quoting 42 U.S.C. § 12112(a)). To establish a *prima facie* case under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she was discharged due to her disability. *Id.* at 747; *Heyman v. Queens Vill. Comm. for Mental Health*, 198 F.3d 68, 72 (2d Cir.1999) (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir.1998)); *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir.2013). There is no dispute that Plaintiff satisfies the first and third elements of a *prima facie* case. Defendant HDMJ is an "employer" because, at the relevant time, it was "engaged in an industry affecting commerce" and employed "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year," *Giordano*, 274 F.3d at 747 (quoting 42 U.S.C. § 12111(5)(A)). Further, Plaintiff was able to perform the essential functions of her waitress position without reasonable accommodation since Plaintiff was able to resume her duties following her knee surgery. Because there are no genuine issues with regards to the first and third prong of the *prima facie* case, the Court's analysis will be confined to the second and fourth prongs of Plaintiff's ADA claim.

148

### a. Plaintiff Is Not Disabled Within the Meaning of the ADA

■ Disability under the ADA is defined as: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2); *Mary Jo C. v. N.Y. State and Local Ret. Sys.*, 707 F.3d 144, 165 (2d Cir.2013); *Giordano*, 274 F.3d at 747 "The term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Fagan v. United Int'l Ins. Co.*, 128 F.Supp.2d 182, 185 (S.D.N.Y.2001). However, a transitory or temporary impairment is not considered substantially limiting under the ADA. *Id.* (quoting *Murray v. Sysco Corp.*, CIVA96CV1073, 1998 WL 160826, at *8 (N.D.N.Y. Apr. 2, 1998) (holding that a knee injury that required surgery following a car accident did not have the required long-term impact to qualify as a disability under the ADA)); *Evans v. City of Dallas*, 861 F.2d 846, 852–53 (5th Cir. 1988) (finding that knee injury requiring surgery was not a disability).

Plaintiff suffered a knee injury after a car accident in February 2005. Compl. at 9. Plaintiff notified Defendant about the accident and subsequently that she would be having surgery on her knee. *Id.* However, the Complaint makes no further mention of Plaintiff's knee condition until January of the following year, when she allegedly injured her knee during her altercation with Peter. In the months following her accident, Plaintiff resumed her waitressing duties at HDMJ and, as inferred by its absence from the record, her injury did not substantially limit her ability to work at the restaurant or from performing any other major life activity. Thus, Plaintiff cannot seek redress under the ADA because she is not disabled within the meaning of the ADA.

### b. Plaintiff Was Not Discharged Due to Her Disability

■ Even assuming for the sake of argument that Plaintiff had a disability under the ADA, Plaintiff has not sufficiently alleged that she was discharged due to her disability. Plaintiff was fired the day after her altercation with Peter and eleven months after her car accident. Plaintiff's Complaint does not even suggest that there was any causal connection between Plaintiff's injury and her termination. Plaintiff has not adequately alleged that she was discriminated against because of her disability; rather, Plaintiff's allegations set forth a claim that she was discriminated against on the basis of her sex, race, and national origin and because she opposed the Owners' behavior. Because the pleading does not meet the fourth prong of the test set forth in *Giordano*, Plaintiff's ADA claim cannot succeed.

### C. Prejudice

■ The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied. Denying this motion would be prejudicial to Plaintiff "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06–CV–14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders*, 2003 WL 1960584, at *3). Without the entry of a default judgment, Plaintiff would be unable to recover for the claims adequately set forth in the Complaint. Since Plaintiff sufficiently made out claims under Title VII for hostile work environment and retaliation, a default judgment is warranted on these claims.

However, Plaintiff cannot prevail on her ADA claim because Plaintiff is not disabled within the meaning of the ADA and was not discharged due to her disability.

For the foregoing reasons, I respectfully recommend to Judge Seybert that: (1) a default judgment be entered against Defendant on Plaintiff's Title VII claims; and (2) entry of default be denied with respect to Plaintiff's ADA claim against Defendant HDMJ.

## V. DAMAGES CALCULATION

■ While a party's default is deemed to constitute concession of all well-pleaded allegations of liability, it is not considered an admission of damages. *Greyhound,* 973 F.2d at 158. Therefore, once a party's default as to liability is established, a plaintiff still must prove damages. *Gutman v. Klein,* No. 03 CV 1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (citing *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974)). The only question remaining, then, is whether Plaintiff has provided adequate support for the relief she seeks. *See Gutman,* 2010 WL 4975593, at *1 (burden is on plaintiff to establish entitlement to damages recovery) (citing *Bravado Int'l Group Merch. Servs. v. Ninna, Inc.,* 655 F.Supp.2d 177, 189 (E.D.N.Y.2009)); *Greyhound,* 973 F.2d at 158).

In general, Plaintiff alleges that she suffered loss of employment, loss of income, loss of employment benefits, emotional distress, embarrassment, and damage to her reputation as a direct and proximate result of Defendant's acts. Joseph Aff. ¶ 20; Declaration of Edward Sample in Support of Pl.'s Mot. for Default Judgment ("Sample Decl.") [DE 46–1] ¶ 22. Plaintiff

sought assistance from a psychologist in an attempt to alleviate her stress, but was unable to pay for the psychologist's services. Joseph Aff. ¶ 21; Sample Decl. ¶ 23. Plaintiff also alleges that she was unable to work for five months following her termination because her knee was re-injured and swollen as a result of Peter's actions. Sample Decl. ¶¶ 19, 21. In sum, Plaintiff seeks back wages, pre-judgment interest, compensatory damages, and attorney's fees. Specifically, Plaintiff requests: (1) $10,650 in back wages for (a) the five months that she was out of work after she was terminated from her position and (b) twelve days from December 12, 2005 through December 23, 2005 when she was sent home without pay; (2) pre-judgment interest on the back wages award from the time the claim arose until the entry of judgment; (3) $50,000 as compensatory damages for emotional distress and mental anguish; and (4) $5,842.50 for reasonable attorney's fees incurred. *See* Sample Decl. ¶¶ 30–36. The Court's analysis of Plaintiff's claims for damages is below.

### A. Back Wages

■ A plaintiff successful in a suit arising under Title VII is generally entitled to an award of back pay. *See, e.g., Noel v. N.Y. State Office of Mental Health Cent. Psychiatric Ctr.,* 697 F.3d 209, 213 (2d Cir.2012) (noting that the remedial provisions of Title VII authorize back pay); *Reynolds v. Barrett,* 685 F.3d 193, 203 (2d Cir.2012); *Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684, 695 (2d Cir.1998); *Vernon v. Port Auth. of N.Y. & N.J.,* 220 F.Supp.2d 223, 234 (S.D.N.Y.2002). An employee is generally entitled to back pay from the date of his or her wrongful termination to the date the discrimination is rectified. *See, e.g., Noel,* 697 F.3d 209, 213; *Clarke v. Frank,* 960 F.2d 1146, 1151

(2d Cir.1992); *see EEOC v. Enter. Ass'n Steamfitters Local No. 638 of U.A.*, 542 F.2d 579, 590 (2d Cir.1976), *cert. denied sub nom. Rios v. Enter. Ass'n Steamfitters Local No. 638 of U.A.*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977); *Heinrich Motors, Inc. v. N.L.R.B.*, 403 F.2d 145, 148 (2d Cir.1968) ("A wrongfully discharged employee is entitled to the difference between what he would have earned but for the wrongful discharge and his actual interim earnings from the time of discharge until he is offered reinstatement.").

 However, an employee who is discharged in violation of Title VII has an obligation to attempt to mitigate damages by using reasonable diligence in finding other employment. *See Bergerson v. N.Y. State Office of Mental Health Cent. Psychiatric Ctr.*, 526 Fed.Appx. 109, 111–12 (2d Cir.2013); *Broadnax v. City of New Haven*, 415 F.3d 265, 268–69 (2d Cir.2005); *Hawkins*, 163 F.3d at 695 (quoting *Ford Motor Co. v. Equal Emp't Opportunity Comm'n*, 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982)) (quotations omitted) (finding that delaying starting a new position three months after termination in violation of Title VII was hardly so long as to be unreasonable as a matter of law); *see* 42 U.S.C. § 2000e–5(g)(1). In order to reduce the meritorious claimant's entitlement to back pay, the defendant employer has the burden of demonstrating that she has failed to attempt to mitigate by establishing that: (1) suitable work existed, and (2) the employee did not make reasonable efforts to obtain it. *See, e.g., Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir.1997); *Clarke*, 960 F.2d at 1152. While working for Defendant, Plaintiff worked six days per week, earning approx-

imately $450.00 a week (or approximately $75 per day) between salary and tips. Joseph Aff. ¶ 7; Sample Decl. ¶ 10. Plaintiff's monthly income between salary and tips is thus approximately $1,950.00 ($450 per week times 4 1/3 weeks—the approximate number of weeks in one month). Joseph Aff. ¶ 7; Sample Decl. ¶ 10.

Plaintiff was sent home and not permitted to work from December 12, 2005 through December 23, 2005 after she complained to Gus about being propositioned for oral sex by a busboy. Compl. at 9. She was not paid during her absence. Sample Decl. ¶ 10. Then, on January 22, 2006, Peter pulled Plaintiff down a flight of stairs. Compl. at 9. Plaintiff was terminated the next day. Compl. at 10. Plaintiff's knee became swollen as a result of this incident and she was unable to work for five months. Sample Decl. ¶ 21. Plaintiff did not seek other employment following her first dismissal on December 12, 2005, and did not acquire employment until June 2006 [2] following her termination in late January 2006.

Plaintiff has successfully demonstrated viable Title VII claims, and she is thus eligible for a back pay award in this case. Defendant must provide Plaintiff her expected income for the time she missed from December 12, 2005 through December 23, 2005 as a result of Defendant's discriminatory acts. That expected income amounts to $900.00 for twelve days of missed work at Plaintiff's claimed wage rate ($75 per day × 12 days = $900). *See* Sample Decl. ¶ 10. Defendant must also reimburse Plaintiff for the five months that she was out of work due to Defendant's discriminatory acts at a rate of $450.00 per week, or $1,950.00 per month ($450 × 4 = $1,800 + 1/3 × $450 = $150;

---

**2.** Plaintiff does not state on what date she was re-employed; however, Plaintiff alleges that

she was out of work for a total of five months.

total of $1,950), for a total of $9,750.00 ($1,950 × 5). The Court finds that the total back pay damage award is $10,650.00.

The record before the Court is devoid of Plaintiff's employment activity for the five-month period from her termination in January 2006 through June 2006. Under existing precedent, Plaintiff is required to mitigate damages in Title VII cases by attempting to find other suitable employment. *See Bergerson,* 526 Fed.Appx. at 111–12; *Broadnax,* 415 F.3d at 268–69; *Hawkins,* 163 F.3d at 695. However, because the Defendant bears the burden of proving that Plaintiff failed to mitigate damages during this time, and the Defendant has defaulted and has not come forth with documentation or evidence to the contrary, the Court respectfully recommends that the Plaintiff receives the full extent of the back pay she is entitled to under Title VII.

### B. Pre–Judgment Interest

■■■■ Pre-judgment interest on back pay awards is an element of complete compensation. *Loeffler v. Frank,* 486 U.S. 549, 558, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (citing *W.V. v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987)). Title VII authorizes a district court to grant pre-judgment interest on a back pay award to discourage employers from attempting to purposely delay paying back wages. *Clarke,* 960 F.2d at 1153; *Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 58 (2d Cir.1984) (citing *Marshall v. Burger King Corp.,* 509 F.Supp. 353, 356 (E.D.N.Y.1981) (finding that pre-judgment interest makes up for the delay in receiving the money and partially offsets the decrease in value due to inflation)); *accord Syrnik v. Polones Const. Corp.,* No. 11, Civ. 7754, 2012 WL 4122801, at *4 (S.D.N.Y. Sept. 29, 2012) (noting that it is ordinarily an abuse of discretion not to

include pre-judgment interest in a back pay award). Courts traditionally use the average Treasury bill rate over the time period in question for back pay compensation. *Manzo v. Sovereign Motor Cars, Ltd.,* No. 08–CV–1229, 2010 WL 1930237, at *11 (E.D.N.Y. May 11, 2010) (noting that, most commonly, courts have borrowed the statutory post judgment interest rate specified in 28 U.S.C. § 1961(a) in order to calculate pre-judgment interest); *Holness v. National Mobile Television, Inc.,* No. 09 CV 2601, 2012 WL 1744847, at *7 (E.D.N.Y. Feb. 14, 2012) (applying the "federal interest rate based on the average rate of return on one-year Treasury bills for the relevant time period between the time the claim [arose in this case] until the entry of judgment pursuant to 28 U.S.C. § 1961(a)") (citations omitted) (alterations in original); *McIntosh v. Irving Trust Co.,* 873 F.Supp. 872, 883 (S.D.N.Y.1995) (finding that the average treasury bill rate should be applied to a plaintiff's award when the rate fluctuates over an extended time period).

■■■■ Further, the award of pre-judgment interest should be calculated from the time the claim arises through the date of judgment. *See, e.g., Levy v. Powell,* No. CV–00–4499, 2005 WL 1719972, at *3 (E.D.N.Y. July 22, 2005); *Collins v. Suffolk County Police Dept.,* 349 F.Supp.2d 559, 565 (E.D.N.Y.2004); *Kuper v. Empire Blue Cross/Blue Shield,* No. 99 Civ. 1190, 2003 WL 23350111, at *3–5 (S.D.N.Y. Dec. 18, 2003), *adopted,* 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004). Finally, in order to guarantee complete compensation to the plaintiff, the interest should be compounded annually. *See Marfia v. T.C. Ziraat Bankasi,* 147 F.3d 83, 90 (2d Cir.1998); *Poliard v. Saintilus Day Care Cent.,* No. 11 CV 5174, 2013 WL 1346238, at *5 (E.D.N.Y. Mar. 7, 2013); *Chisholm v. Memorial Sloan–Kettering Cancer Ctr.,* 824

F.Supp.2d 573, 580 (S.D.N.Y.2011); *Kuper,* 2004 WL 97685, at *3. In sum, the "methodology to be used to calculate the award of pre-judgment interest is as follows:

> First, the [backpay] award[ ] should be divided pro rata over the appropriate time period. Second, once the award is divided, the average annual United States treasury bill rate of interest referred to in 28 U.S.C. § 1961 will be applied. Third and finally, in order to guarantee complete compensation to the plaintiff, the interest will be compounded annually.

*Levy,* 2005 WL 1719972, at *3 (alterations in original) (citing *Robinson v. Instructional Systems, Inc.,* 80 F.Supp.2d 203, 208 (S.D.N.Y.2000), *aff'd on other grounds sub nom Farias v. Instructional Systems, Inc.,* 259 F.3d 91 (2d Cir.2001)); *Kadden v. VisuaLex, LLC,* No. 11 Civ. 4892, 2012 WL 5199369, at *2 (S.D.N.Y. Oct. 22, 2012); *Norris v. N.Y. City College of Tech.,* No. 07–CV–853, 2009 WL 3841970, at *2 (E.D.N.Y. Nov. 18, 2009); *(Jowers v. DME Interactive Holdings, Inc.,* No. 00 Civ. 4753, 2006 WL 1408671, at *12 (S.D.N.Y. May 22, 2006)).

 Based on the foregoing, this Court recommends that Plaintiff be granted pre-judgment interest on Plaintiff's total back pay damage award of $10,650.00. The $10,650.00 back pay award should be divided pro rata from December 12, 2005, the earliest ascertainable date for the cause of action, through to the date of entry of judgment. Once the award is divided, the average annual United States Treasury bill rate of interest referred to in 28 U.S.C. § 1961 from 2005 to 2013 should be applied. Utilizing the government website http://www.treasury.gov/resource-center/ data-chart-center/interest-rates/Pages/ default.aspx to ascertain the treasury bill rates during the period in question, then averaging those rates, the Court finds the applicable rate to be 3.37. Third and finally, the interest should be compounded annually.

### C. Compensatory Damages

 While compensatory damages are recoverable under Title VII, there are limitations on awards depending on the size of the employer. *See, e.g., Holness v. Nat'l Mobile Television, Inc.,* 2012 WL 1744847, at *6, n. 4 (E.D.N.Y. Feb. 14, 2012) ("Title VII sets caps on punitive and compensatory damages to reflect the size of the employer whose misconduct is to be punished.") (citing 42 U.S.C. § 1981a(b)(3)(A)); *Walia v. Vivek Purmasir & Assocs.,* 160 F.Supp.2d 380, 389 (E.D.N.Y.2000) (noting that the amount of compensatory damages for a respondent who has more than 14 but fewer than 101 employees shall not exceed $50,000) (citing 42 U.S.C. § 1981a(b)(3)(A)). In the case at hand, Defendant employs more than 15 employees, *see* Compl. at 6, and thus cannot be subject to a compensatory damages award greater than $50,000.00. As noted, Plaintiff seeks $50,000 as compensatory damages for emotional distress and mental anguish.

Plaintiff was employed as a waitress at HDMJ restaurant for approximately 22 months. Over the course of her employment, she was repeatedly called racially and sexually derogatory names. In addition, the Owners and other employees also asked Plaintiff to perform oral sex on them on numerous occasions and Plaintiff was subjected to pervasive lewd behavior. When Plaintiff complained about these instances of discrimination, the Owners refused to assist her, and, in some instances, acted to punish her. Following one incident, Plaintiff was sent home and not allowed to return to work for two weeks. Less than one month after she returned to work, Plaintiff was pulled down a flight of

stairs, cursed at, and ridiculed because she asked her boss about why she was being treated unfairly. Plaintiff's employment was terminated the next day, specifically because she complained about the unfair treatment. As a result, Plaintiff suffered emotional distress, humiliation, irritability, weight loss, severe anxiety and depression. Sample Decl. ¶ 22–23; Joseph Decl. ¶ 21. Plaintiff's symptoms persist to this day and she fears that future employers will treat her in a similar manner. Sample Decl. ¶ 24; Joseph Decl. ¶ 21. Specifically, Plaintiff states

> I became upset, scared and despondent because of the way I was treated by Defendant. I became irritable and withdrew from my family and friends. I lost weight, felt severe anxiety and had trouble concentrating. I cried continually, felt degraded and suffered from depression. I felt hopeless, helpless and suffered nightmares. I lost interest in hobbies and events. My feelings persist to this day. I fear that other employers might treat me the same way. My social life has changed. I sought counseling from psychiatrist Dr. Benjamin Hirsch, Ph.D., but did not have the financial resources to continue treatment.

Joseph Decl. ¶ 21. In light of the continuing discriminatory and abusive treatment described by the Plaintiff, it is reasonable to conclude that after approximately two years of enduring this type of treatment by her employer, Plaintiff had developed such tangible emotional distress and mental anguish. Plaintiff maintains that her condition was sufficiently serious to cause her to seek the assistance of a psychologist but she was unable to pay for the psychologist's services. *Id.* at 23. Plaintiff has not submitted any medical or mental health records in support of her claim for damages.

Compensatory damages should fairly compensate a victim of discrimination for her injuries and evaluate the reasonableness of the award to see whether it deviates from what would be considered reasonable compensation. *See, e.g., Miner v. City of Glens Falls*, 999 F.2d 655 (2d Cir.1993); *Shea v. Icelandair*, 925 F.Supp. 1014, 1020–21 (S.D.N.Y.1996). Evidence of mental anguish and emotional distress varies in severity on a case-by-case basis and, as a consequence, presents difficulties for damages award determinations. Thus, reasonable damages awards are extrapolated from awards to plaintiffs who suffered similar injuries. *Walia*, 160 F.Supp.2d at 391.

For typical or garden-variety emotional distress claims, district courts have awarded damages ranging from $5,000 to $35,000, based upon the plaintiff's vague or conclusory testimony of distress. *Manson v. Friedberg*, 08 CIV. 3890, 2013 WL 2896971, at *7 (S.D.N.Y. June 13, 2013) (granting a $10,000 damage award for plaintiff who suffered low self-esteem, lacked confidence in herself, and lacked physical manifestations of her emotional distress) (citing *Becerril v. East Bronx NAACP Child Dev. Ctr.*, No. 08 Civ. 10283, 2009 WL 2611950 at *6 (S.D.N.Y. Aug. 18, 2009)). "Significant or substantial emotional distress claims ... consist of more substantial harm, usually evidenced through medical testimony or documentation." *Id. See also Press v. Concord Mortg. Corp.*, No. 08 Civ. 9497(PKC)(GWG), 2009 WL 6758998 at *7 (S.D.N.Y. Dec. 7, 2009).

In this case, Plaintiff's claim for mental anguish and emotional distress is based on her Complaint, her affidavit, and her attorney's declaration. Plaintiff's allegations of emotional distress are significant but are stated as conclusions drawn by the Plaintiff herself. Without any med-

ical documentation, a damages award of $50,000 is difficult to support. *Compare Manson,* 2013 WL 2896971, at \*8 (*citing Becerril,* 2009 WL 2611950 at \*6) (awarding $50,000 for emotional distress that was "significant" where plaintiff submitted documentation from her physician that she was prescribed three medications, was diagnosed as depressed, suffered migraines and post-concussive syndrome). Based on Plaintiff's affidavit here, and considering the length of time Plaintiff was employed with Defendant, the duration and severity of the harassing behavior, and the applicable case law, the Court finds an award of $30,000.00 is reasonable to compensate the Plaintiff for her emotional distress claim. *See Caravantes v. 53rd St. Partners, LLC,* No. 09 Cv. 7821, 2012 WL 3631276, at \*22 (S.D.N.Y.2012) ("garden variety" emotional distress claims may merit an award of $30,000); *Jowers v. DME Interactive Holdings, Inc.,* 00 CIV. 4753, 2006 WL 1408671, at \*4 (S.D.N.Y. May 22, 2006) (adopting magistrate judge's award of $15,000 for emotional distress where plaintiff testified that she suffered "continued stress, anger, sadness, and frustration," suffered "an ongoing humiliation," cried most days, was depressed, suffered panic attacks, headaches, nausea, loss of appetite, insomnia and broke out in hives); *Fowler v. New York Transit Auth.,* No. 96 Civ. 6796, 2001 WL 83228, at \*13 (S.D.N.Y. Jan. 31, 2001) (reducing emotional distress award from $50,000 to $25,000, where the plaintiff "did not present any evidence detailing the duration or magnitude of his emotional injuries, nor did he present evidence of medical or psychological treatment"). Thus, the Court respectfully recommends to Judge Seybert that Plaintiff be awarded $30,000 for emotional distress based on her Title VII claims.

**D. Attorney's Fees**

 Under the so-called American Rule, "each party is to bear its own costs of litigation, unmitigated by any fee-shifting exceptions." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Co. of Albany,* 522 F.3d 182, 186 (2d Cir.2008). By contrast, attorneys for prevailing plaintiffs are eligible to receive attorney's fees under Title VII. 42 U.S.C. § 2000e–5(k); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 913 (2d Cir.1997) (citing *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 86 (2d Cir. 1983)). The Supreme Court has interpreted Section 2000e–5(k) to mandate attorney's fees to a prevailing plaintiff unless "special circumstances" would render such an award unjust. *Clarke,* 960 F.2d at 1152 (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370 (1975)). Attorney's fees are calculated at a reasonable rate for the district in which the court sits. *Vernon,* 220 F.Supp.2d at 229; *see Polk v. New York State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir.1983). The court uses its discretion and familiarity with the case and general arguments of the parties to determine the exact meaning of 'reasonable.' *Clarke,* 960 F.2d at 1153; *see Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

 Traditionally, in cases brought pursuant to Title VII, a reasonable attorney's fee was calculated using the lodestar, the number of hours reasonably spent multiplied by the reasonable hourly rate for an attorney, and then adjusted based on the particular circumstances of the case. *Pinner v. Budget Mortg. Bankers, Ltd.,* 336 F.Supp.2d 217, 219 (E.D.N.Y.2004), *aff'd,* 169 Fed.Appx. 599 (2d Cir.2006); *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *see Millea v. Metro–N. R.R. Co.,* 658 F.3d 154, 166 (2d Cir.2011) (quoting *Arbor Hill,* 522 F.3d at 183). Both the Second Circuit and the Supreme Court "have held that the lodestar method—the product of a reasonable

hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir.2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir.2007)). "[W]hether the calculation is referred to as the lodestar or the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expended." *Pinzon v. Paul Lent Mechanical Sys.*, No. 11–CV–3384, 2012 WL 4174725, at *5 (E.D.N.Y. Aug. 21, 2012), *adopted by* 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). These factors include:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184. "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Finkel v. Omega Communication Servs., Inc.*, 543 F.Supp.2d 156, 164 (E.D.N.Y.2008) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir.1983)).

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits. *See Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170 (2d Cir.2009); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983); *Pinzon*, 2012 WL 4174725, at *5. In 2011, the Second Circuit affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. *Konits v. Karahalis*, 409 Fed.Appx. 418, 422–23 (2d Cir.2011). Similarly, another court in this district has observed that "reasonable fees in this district vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates" and $70 to $80 for paralegals or legal assistants. *Penberg v. HealthBridge Mgmt.*, No. 08–CV–1534, 2011 WL 1100103, at *6–7 (E.D.N.Y. March 22, 2011).

 In addition, to determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03–5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ." *Cho v. Koam Medical Servs. P.C.*, 524 F.Supp.2d 202, 209 (E.D.N.Y.2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous

time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F.Supp.2d at 209 (internal citations, quotation marks, and alteration omitted).

■ In this matter, Plaintiffs retained the services of Frank & Associates, P.C., located in Farmingdale, New York solely for purposes of preparing the motion for entry of a default judgment. None of the attorneys from Frank & Associates ever made a court appearance in this case. To support Plaintiffs' request for attorneys' fees, Plaintiff has submitted a Declaration of Attorney Sample, counsel for Plaintiff, with contemporaneous billing records attached to the declaration ("Sample Fee Decl."). Sample Fee Decl., Ex. A. Plaintiff's counsel also provided this Court with further identifying information for the attorneys who worked on this case, the hours each attorney expended, and their normal hourly rates. *See* Letter of July 10, 2013 from Edward Sample [DE 50]. Counsel submitted this information at the Court's request during a telephone call on July 10, 2013. The Court requested additional information because the Sample Fee Declaration and annexed chart did not identify the titles of the attorneys working on the case or their billing rates. Further, Plaintiff's application referred to applying a "blended rate" of $250 to the hours worked. Sample Fee Decl. ¶ 36. The Court declines to utilize a "blended rate." Based on the foregoing case law, the Court required more specific hourly rate information in order to calculate attorney's fees in this action.

The Court now finds that Plaintiff's submissions provide sufficient evidence to form the basis for an award of damages without a further hearing. Plaintiff submitted a spreadsheet detailing the tasks attorneys completed and the amount of

hours taken to perform each task. A total of 24.45 hours of attorney time was expended in preparing the motion for default judgment against Defendant. *See* Sample Decl. Exhibit A. Neil Frank, a managing partner, has an hourly rate of $550.00; Peter Romero, a partner, has an hourly rate of $450.00; Edward Sample, a senior associate, has an hourly rate of $300.00; and David Barnhorn, a junior associate has an hourly rate of $175.00. *Id.*

The Court declines to apply these rates based on the prevailing case law in the Eastern District of New York cited above. Instead, the Court finds the following rates to comport with current decisions in this District. The records reflect that Managing Partner Neil Frank expended 1.5 hours of work on this matter. Assigning an hourly rate of $350 per hour to Attorney Frank's time yields a total of $525. Partner Peter Romero expended .25 hours on the matter; assigning an hourly rate of $275 yields a total of $68.75. Assigning an hourly rate of $200 to senior associate Edward Sample for his 10 hours of work yields a total of $2,000. Finally, utilizing an hourly rate of $140 for the 12.7 hours expended by junior associate David Barnhorn yields a total of $1,778. This Court finds the hours expended by Plaintiff's counsel reasonable for services rendered in a proceeding for attorneys practicing in the Eastern District of New York. Applying the hourly rates of Plaintiff's attorneys to the amount of time each attorney spent on this matter, this Court therefore recommends that Plaintiff be awarded $4,371.75 in attorney's fees for 24.45 hours worked by her counsel in this case.

## VI. CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Seybert that: (1) a default judgment be entered against Defendant HDMJ on Plaintiffs' Ti-

tle VII claims; and (2) entry of default be denied against Defendants on Plaintiffs' claims under the ADA.

I further recommend that damages be awarded to Plaintiff as follows:

- $10,650.00 in back pay due to unlawful discrimination under Title VII;

- Pre-judgment interest on Plaintiff's total back pay damages award of $10,650.00. The $10,650.00 back pay award should be divided pro rata from December 12, 2005, the earliest ascertainable date for the cause of action, through to the date of entry of judgment. Once the award is divided, the average annual United States treasury bill rate of interest referred to in 28 U.S.C. § 1961 should be applied. The Court finds this rate to be 3.37%. Third and finally, the interest should be compounded annually.

- $30,000 in compensatory damages for emotional distress suffered by Plaintiff as a result of Defendant's unlawful discrimination.

- $4,371.75 for reasonable attorney's fees incurred.

## VII. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver

of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.1997), *cert. denied*, 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir.1996).

*Plaintiff's counsel is directed to serve a copy of this Report and Recommendation upon Defendant forthwith by overnight mail and first-class mail and to file proof of service on ECF.*

**SO ORDERED.**

Dated: Central Islip, New York, August 19, 2013.